UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**STEVE AARON**, et al,

    Plaintiffs,

vs.

    Case No.:    8:09-cv-2493-SDM-TGW

**THE TRUMP ORGANIZATION, INC.**, a New York Corporation, and **DONALD J. TRUMP**, an individual,

    Defendants.

_____/

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Steve Aaron, Ilene Aaron, Rudolph Alexander, Martha Alexander, Arroyo Holdings, LLC, Benjamin Benvenuti, Chidi Ahanotu, Robert Gesemyer, Alan Bridges, Burge Holdings, LLC, Art P. Caruso, Jill L. Caruso, Michael D. Dinkel, Ken Dilger, Vic Fangio, Thomas Frederick, Deborah Frederick, James R. Frederick, $H_2O$ Front Investments, LLC, Dwight J. Halligan, Integrated Properties, LLC, Jeff Italiano, Elaine Lucadano, Thomas R. Warren, F. Blaine Panico, Lenard E. Rodgers, Gregory P. Rodgers, T. Patrick Rodgers, Cheri Rodgers Jaensch, Sehwani Enterprises, Inc., Joe Shultz, NLR, T, LLC, Dennis Crum, Douglas J. Rhoten, TReal, LLC, William S. Zwick, Tamboli Family Limited Partnership, Kenneth Olipra, Adaja Properties, LLC, Alex Petro, and James S. Moody, III, Ashley Moody, Patricia Moody McNab, individually, and on assignment from James S. Moody, Jr., and Irma C. Moody as trustee of the Irma Moody Revocable Trust (collectively, "**Plaintiffs**") sue Defendants, The Trump

Organization, Inc., a New York corporation ("**Trump Co.**"), and Donald J. Trump, an individual ("**Trump**") ("Trump" and "Trump Co." shall be referred to collectively as "Defendants"), and allege:

## INTRODUCTION

1. This case involves a series of fraudulent and negligent misrepresentations made by Trump and Trump Co. in their efforts to convince the Plaintiffs to purchase units in a high rise luxury condominium tower to be located in downtown Tampa, Florida near the Hillsborough River.

2. Trump and Trump Co., through marketing materials and public statements, held themselves out as true partners and joint developers of the project known as Trump Tower Tampa, a Condominium (the "**Trump Tower**"), to entice the Plaintiffs and others to purchase units in the Trump Tower.

3. In truth, Trump and Trump Co. were not partners or developers in Trump Tower, and had only sold the "Trump" name to use in inducing buyers to purchase units. The Plaintiffs all purchased units of various sizes with the understanding that they were buying a Trump development, when in actuality they were buying a project developed by SimDag/Robel, LLC ("**SimDag**"), and named "Trump."

## THE PARTIES, JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked pursuant to the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1703 *et seq.*, and 28 U.S.C. §§ 1331.

5. This Court also has supplemental jurisdiction over the Plaintiffs' pendent claims in accordance with Federal Rule of Civil Procedure 18(a) and 28 U.S.C. § 1367,

as those state law claims are so related to the federal question claim alleged that they form part of the same case or controversy under Article III of the United States Constitution.

6. All of the Plaintiffs entered into purchase contracts and paid money to buy condominium units in the Trump Tower in the form of substantial cash deposits of millions of dollars. The Defendants have copies of the Plaintiffs' reservation agreements and purchase contracts, and due to the voluminous nature of such documents and the personal, confidential information included in such documents, the documents are not attached to the complaint but shall be produced separately to the Defendants, if requested.

7. Trump is a resident of the State of New York and, at all times material, was doing business under the laws of the State of Florida.

8. Trump Co. is a foreign corporation and, at all times material, was doing business under the laws of the State of Florida.

9. At all times material, Trump and Trump Co. acted within the scope of Section 718.103(16), Florida Statutes, and 15 U.S.C. § 1701(5).

10. The Court has personal jurisdiction over the Defendants because, at all times material, the Defendants have directly, or through their agents, officers, and/or representatives, operated, conducted, engaged in, and carried on a business venture in the State of Florida, committed acts within the State of Florida related to the allegations set forth herein, and caused injury to the Plaintiffs arising out of acts and/or omissions by the Defendants, which occurred in Tampa, Hillsborough County, Florida.

11. Venue is proper within this district because the cause of action set forth below accrued in Hillsborough County, Florida, and a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in Hillsborough County, Florida, and the real property that is the subject of the action is situated in Hillsborough County, Florida. Venue is also proper in the Middle District of Florida because all of the Defendants transacted business in the Hillsborough County, Florida.

## FACTS COMMON TO ALL COUNTS

12. Trump Tower was a residential condominium development planned for 190 units, which was originally scheduled for building and substantial completion no later than December 31, 2008, at 103 Ashley Street in downtown Tampa.

13. At all times relevant to this action, the Defendants held themselves out as partners and joint developers of Trump Tower, and that "Donald J. Trump [is a] worldwide renowned builder and developer of real estate."

14. From its inception, the Defendants, acting within the scope of Section 718.103(16), Florida Statutes, and 15 U.S.C. § 1701(5), along with SimDag, marketed Trump Tower as "A Donald J. Trump Signature Property" and "A Development of Donald J. Trump and SimDag-RoBEL, LLC."

15. Among other things, and merely offered as an example, on January 10, 2005, the Defendants, acting within the scope of Section 718.103(16), Florida Statutes, and 15 U.S.C. § 1701(5), issued a press release titled "Donald J. Trump To Partner With SimDag-Robel In Developing A New Residential Condominium Tower In Downtown Tampa" that made the following material representations: "Donald J. Trump announced

today plans for a 52-story, ultra-luxury condominium in downtown Tampa, Florida, to be called Trump Tower Tampa. The project will be developed in a partnership with local Tampa Bay-area developers SimDag-RoBEL, LLC. Trump Tower Tampa will be Mr. Trump's first project, as well as the tallest residential building, on the Gulf of Mexico." A copy of the Defendants' January 10, 2005 press release is attached hereto as **Exhibit No. 1**.

16. The January 10, 2005 press release issued by the Defendant goes on to state: "We are developing a signature landmark property . . ." and that "Donald J. Trump established The Trump Organization in 1974 as the umbrella organization for all of his real estate developments and other corporate affiliates. No other real estate company has established the international brand identity that Trump has created. In addition to being the largest developer in New York, Mr. Trump is currently developing residential, hotel, and golf club projects in Chicago, Los Angeles, Toronto, Phoenix, Las Vegas, Miami, the Caribbean, Westchester, NY, Bedminister, NJ, and Seoul, South Korea."

17. In addition, the Defendants, acting within the scope of Section 718.103(16), Florida Statutes, and 15 U.S.C. § 1701(5), made numerous material representations through promotional materials, websites, and statements to media (both print and television media) that held themselves out as a developer and partner in the Trump Tower development and that the Defendants had a substantial financial stake in the development. Trump, on a number of occasions, stated that he would like to "buy more of a stake" in the development.

18. All of the Plaintiffs, in reliance on the Defendants' material representations, entered into agreements for the purchase of condominium units in Trump Tower and paid millions of dollars in deposits to secure their units.

19. Thereafter, the Trump Tower development's financing plans and fundamental timeline for construction and completion materially changed. The Defendants never completed the Trump Tower.

20. Subsequent to making their deposits and the demise of the Trump Tower development, in approximately May 2007, the Plaintiffs discovered for the first time that contrary to the representations made by Defendants, neither Trump nor Trump Co. had an interest in the property or SimDag, and the Defendants participated in the development only through the licensing of the "Trump" name. That discovery was made as a result of a lawsuit filed by Trump against SimDag on or about May 25, 2007.

21. In the lawsuit against SimDag filed in the United States District Court for the Middle District of Florida on May 25, 2007, Trump sought millions of dollars in unpaid fees from SimDag and others, pursuant to a confidential and previously undisclosed license agreement entered into between Trump and SimDag on October 27, 2004 (the "**License Agreement**"). A copy of the License Agreement, along with amendments thereto, is attached hereto as **Exhibit No. 2**.

22. Pursuant to the confidential and previously undisclosed License Agreement, SimDag agreed to pay Trump a base license fee in the amount of $4,000,000.00, as well as an additional license fee in an amount equal to 50% of the defined Net Sales Profit of the Development. In return, Trump provided SimDag with a

license to use the Trump name and associated marks. The existence of the confidential License Agreement between Trump and SimDag was made public by the media on or about May 30, 2007.

23. The License Agreement included a confidentiality provision that prohibited both Trump and SimDag from disclosing the existence of the agreement or its contents to anyone for any purpose, unless required by law. Specifically, the Confidentiality clause provides:

> **Confidentiality**. Licensor and Licensee covenant and agree that, without the written consent of the other Party, unless required by law, **they will not, under any circumstances, disclose or permit to be disclosed the existence of this Agreement or any of its contents, to any persons or entities for any purpose whatsoever**, other than solely to their respective shareholders, directors, members, officers and other employees, attorneys and accountants (collectively, "Affiliated Parties"), in each such case, on a "need to know basis." All Affiliated Parties shall be deemed bound by the provisions of this Paragraph 15. In connection with any such permitted disclosure to any Affiliated Parties, Licensor and Licensee, as applicable, shall be liable to the other Party for the acts or omissions of their Affiliated Parties that are in violation of this Paragraph 15.

24. In response to the lawsuit filed by Trump, SimDag filed a counterclaim against Trump for breach of contract for Trump's disclosure of the confidential License Agreement to the public by attaching that document to his lawsuit filed in the public record.

25. The Plaintiffs have retained the undersigned counsel to represent them and are obligated to pay their attorneys a reasonable fee and costs for their services rendered in this action.

26. All conditions precedent to the bringing and maintenance of this action and the granting of the relief requested have occurred have been performed or have been waived.

## COUNT I
## (ISLA VIOLATION, 15 U.S.C. § 1703)

27. The Plaintiffs reallege and incorporate by reference Paragraphs 1-26 above as if fully stated herein.

28. This is an action against the Defendants for violation of the Interstate Land Sales Full Disclosure Act ("**ILSA**"), 15 U.S.C §1703(a)(2), pursuant to 15 U.S.C. §1709(a).

29. The purpose and intent of ILSA is to insure that buyers, like the Plaintiffs, are informed of facts that will enable them to make an informed decision about purchasing real estate property and prohibits developers, like the Defendants, from making material false statements or omissions about the development, like the Trump Tower development.

30. At all times material, the Defendants were each participants in the sale or marketing of real property interests in the Trump Tower development, which was marketed by means of interstate commerce and are subject to regulation under the ILSA.

31. The Defendants were actively, and in direct face-to-face participation, involved in the sale and advertisement of the Trump Tower development, which included, without limitation, the promotional plan for the development. At all times material, the Defendants offered to sell, directly sold, and advertised the sale of condominium units in the Trump Tower development.

32. The Defendants were not merely incidental players in the sales scheme, but actively involved in the planning and promotion of the Trump Tower development.

33. The participation and activities of Trump and Trump Co. in relation to the marketing of the development and the luring of Plaintiffs as buyers of a condominium unit within the development make the Defendants, Trump and Trump Co., responsible under ILSA as developers and/or as agent and/or as aiders and abettors of Trump Co.

34. The Defendants have engaged in activities prohibited by the ILSA, which include, but are not limited to, the following: (a) employing a device, scheme, or artifice to defraud; (b) obtaining money by means of an untrue statement of a material fact, or by an omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision; and (c) engaging in a transaction, practice, or course of business which operates or would operate as fraud or deceit upon a purchaser.

35. For the purpose of inducing the Plaintiffs to enter into the purchase agreements and pay millions of dollars in deposits, the Defendants, through their officers, directors, and agents, made numerous material representations regarding the Trump

Tower development, which included, but are not limited to, the following: (a) that all of the Defendants were partners and joint developers in the Trump Tower development; (b) that Trump possessed a substantial ownership interest in the development; and (c) that the Trump Tower would be completed and the condominium units would be delivered to Plaintiffs no later than December 31, 2008.

36. In reliance on the Defendants' representations, and lured by the marketing activities of the Defendants and their represented interests in the development, the Plaintiffs entered into purchase agreements and paid millions of dollars in deposits to secure condominium units in the Trump Tower.

37. The representations made by Defendants were false and/or misleading and known by the Defendants to be false and/or misleading at the time these representations were made because, among other things, and merely offered as examples without limitation: (a) the roles and interests of the respective Defendants in connection with the Trump Tower development were and are different than as represented by the Defendants; and (b) the Defendants had no intention and/or ability to complete the Trump Tower and deliver the condominium units to the Plaintiffs by December 31, 2008.

38. As a result, the Plaintiffs have been injured and damaged by the actions of the Defendants.

39. The Plaintiffs have retained the undersigned counsel to represent them in this action and are entitled to recover their attorneys' fees and costs pursuant to 15 U.S.C. § 1709(c).

**WHEREFORE**, the Plaintiffs demand judgment in their favor and against the Defendants, Donald J. Trump and The Trump Organization, Inc., for damages together with prejudgment interest, attorneys' fees and costs, and for such further relief as the Court deems appropriate.

## COUNT II
### (NEGLIGENT MISREPRESENTATION)

40. The Plaintiffs reallege and incorporate by reference Paragraphs 1-26 above as if fully stated herein.

41. This is a common law claim for negligent misrepresentation against the Defendants.

42. The representations made by the Defendants and their employees and agents and information provided by the Defendants in their sales, promotional, and offering materials, including the Prospectus, the Property Report, the official Development website, press releases and the Purchase Agreement were false and/or misleading with regard to Trump Tower development with such gross negligence as to warrant punitive damages. Among other things, and without limitation, the Defendants materially represented that: (a) the roles and interests of the Defendants in connection with the development, particularly Trump and Trump Co., were different than they in fact were and are; and (b) the Trump Tower development would be completed not later than December 31, 2008.

43. The representations made by Defendants regarding their respective roles and interests, and the estimated date for construction and completion of the Trump Tower

development were false and misleading and material to the Plaintiffs, and relied upon by Plaintiffs, in entering into their purchase agreements and paying their deposits.

44. The Plaintiffs reasonably relied on those false and/or misleading representations by the Defendants and their employees and agents, and the information provided by the Defendants when the Plaintiffs entered their purchase agreements and paid their deposits.

45. As a result, the Plaintiffs have been injured and damaged by the actions of the Defendants.

**WHEREFORE**, the Plaintiffs demand judgment in their favor and against the Defendants, Donald J. Trump and The Trump Organization, Inc., for damages, including punitive damages, together with prejudgment interest, and for such further relief as the Court deems appropriate.

## COUNT III
### (FRAUDULENT MISREPRESENTATION)

46. The Plaintiffs reallege and incorporate by reference Paragraphs 1-26 above as if fully stated herein.

47. This is a common law claim for fraudulent misrepresentations against the Defendants.

48. The representations made by the Defendants and their employees and agents and information provided by the Defendants in their sales, promotional, and offering materials, including the Prospectus, the Property Report, the official development website, press releases and the Purchase Agreement were false and/or

misleading with regard to the Trump Tower development with such gross negligence as to warrant punitive damages. Among other things, and without limitation, the Defendants materially represented that: (a) the roles and interests of the Defendants in connection with the development, particularly Trump and Trump Co., were different than they in fact were and are; and (b) the Trump Tower development would be completed not later than December 31, 2008.

49. The representations made by Defendants regarding their respective roles and interests, and the estimated date for construction and completion of the Trump Tower development were false and misleading and material to the Plaintiffs, and relied upon by Plaintiffs, in entering into their purchase agreements and paying their deposits.

50. The Plaintiffs reasonably relied on those false and/or misleading representations by the Defendants and their employees and agents, and the information provided by the Defendants when the Plaintiffs entered into their purchase agreements and paid their deposits.

51. As a result, the Plaintiffs have been injured and damaged by the actions of the Defendants.

**WHEREFORE**, the Plaintiffs demand judgment in their favor and against the Defendants, Donald J. Trump and The Trump Organization, Inc., for damages, including punitive damages, together with prejudgment interest, and for such further relief as the Court deems appropriate.

## COUNT IV
## (INFORMATION NEGLIGENTLY SUPPLIED)

52. The Plaintiffs reallege and incorporate by reference Paragraphs 1-26 above as if fully stated herein.

53. This is a common law claim for information negligently supplied against the Defendants.

54. At all times material, the Defendants, in the course of their business, owed a duty to supply truthful and accurate information for the guidance of others, like the Plaintiffs.

55. As a result of the Defendants' misrepresentations and other false information provided to the Plaintiffs, and the Defendants' conduct as set forth above, the Defendants breached their duties owed to the Plaintiffs by supplying false and misleading information for the Plaintiffs' guidance with such gross negligence as to warrant punitive damages.

56. As a direct and proximate result of the Defendants' wrongful conduct, the Plaintiffs have been injured and damaged.

**WHEREFORE**, the Plaintiffs demand judgment in their favor and against the Defendants, Donald J. Trump and The Trump Organization, Inc., for damages, including punitive damages, together with prejudgment interest, and for such further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

The Plaintiffs hereby demand a jury trial on all issues so triable against the Defendants, The Trump Organization, Inc., and Donald J. Trump.

**CLARK & MARTINO, P.A.**
J. Daniel Clark, Esq.          FBN 0106471
3407 W. Kennedy Boulevard
Tampa, FL 33609
(813) 879-0700
(813) 879-5498 (Facsimile)
dclark@clarkmartino.com
www.clarkmartino.com

- and -

**WILLIAMS SCHIFINO MANGIONE &
   STEADY, P.A.**
Kenneth G. Turkel, Esq.        FBN 867233
201 N. Franklin Street, Suite 3200
Tampa, Florida 33602
(813) 221-2626
(813) 221-7335 (Facsimile)
kturkel@wsmslaw.com
www.wsmslaw.com


By:   /s/ J. Daniel Clark
         J. Daniel Clark, Esq.

**Attorneys For Plaintiffs**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 11th day of January, 2010, a true and correct copy of the foregoing First Amended Complaint and Demand For Jury Trial was filed electronically. Notice of this filing will be sent to all parties in this case by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

          /s/   J. Daniel Clark
               J. Daniel Clark, Esq.